AGRI AFFILIATES, INC., APPELLEE, V. CALVIN R. BONES AND
AUDREY J. BONES, TRUSTEES OF THE CALVIN R. AND
AUDREY J. BONES FAMILY TRUST, APPELLANTS.
660 N.W.2d 168

Filed May 2, 2003.   No. S-01-1074.

Claude E. Berreckman, Jr., of Berreckman & Berreckman, P.C., for appellants.

Terrance O. Waite and Keith A. Harvat, of Waite & McWha, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Agri Affiliates, Inc., sued Calvin R. Bones and Audrey J. Bones, trustees of the Calvin R. and Audrey J. Bones Family Trust, for a commission resulting from the sale of real estate. In their answer, the Boneses pled several defenses and filed a counterclaim for, inter alia, damages resulting from their defense costs in *Keller v. Bones*, 260 Neb. 202, 615 N.W.2d 883 (2000). Both parties filed motions for summary judgment. The Lincoln County District Court overruled the Boneses' motion for summary judgment and dismissed their counterclaim. Agri Affiliates' motion for summary judgment was granted. This appeal followed. We moved this case to our docket pursuant to our authority to regulate the caseloads between this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## FACTUAL BACKGROUND

The Boneses entered into an exclusive listing agreement with Agri Affiliates on May 24, 1997, to sell ranch land near North Platte, Nebraska, which was owned by the trust. That agreement provided that Agri Affiliates, as broker, was to receive a commission of 6 percent for services provided "upon the Broker finding a purchaser who is ready, willing and able to complete the purchase as proposed by the Owner." The parties agreed that the listing price for the property was to be $490,000, or $245 per acre. At Calvin's request, the listing agreement included language drafted by John Childears, managing partner and a broker at Agri Affiliates, which provided that "<u>Seller reserves current Tenant from this listing for six (6) months from date of Seller's signature. If Tenant is successful buyer within said six months, Broker will close the sale and receive 1% commission.</u>"

Both Calvin and Audrey testified that the current tenant of the property, Lydic Brothers, had been notified that the property was for sale, and further that they had inquired of Don Lydic, a representative of Lydic Brothers, whether Lydic Brothers would be interested in purchasing the property. The record shows Lydic Brothers made an offer "somewhere between . . . 190 and $200 an acre" prior to the Boneses' entering into the listing agreement with Agri Affiliates. Lydic's testimony also revealed that he was informed the property had been listed and was aware of the "split sales commission" arrangement.

Loren Johnson, the broker who handled the sale for Agri Affiliates, testified that he would periodically contact Lydic to determine whether Lydic Brothers was interested in the property. Mike Polk, another Agri Affiliates agent, also contacted Lydic sometime between July 10 and 17, 1997, informing him that an offer of $220 per acre on the property had been received. Lydic responded by saying, "I think we are interested in it, but why . . . should [we] bid against ourselves . . . ." Thereafter, on July 17, Johnson telephoned Lydic, notifying him that Agri Affiliates had a buyer who was planning to make a full price offer. According to Lydic, he responded to this July 17 notification by telling Johnson, " 'Loren, that's a lot of money, you know.' " Shortly after this telephone conversation, Johnson met with Dean Keller, who made an offer for the property at the full

list price of $245 per acre. Johnson had no further contact with Lydic after receiving Keller's offer.

The purchase agreement signed by Keller was to expire at 5 p.m. on July 21, 1997, and was sent to the Boneses at their home in Council Bluffs, Iowa. After receipt of the Keller offer, the Boneses and Johnson had a telephone discussion late in the afternoon of July 21 regarding the offer. Before signing the agreement, the Boneses asked if Lydic Brothers had any interest in the property; Johnson replied that it did not.

In their testimonies, both Calvin and Audrey also indicate that in response to their hesitation about signing the purchase agreement, Johnson told them that "it doesn't make any difference to me whether you take the offer or not. They have met the asking price, and therefore you owe us the commission." The purchase agreement was then signed and faxed to Agri Affiliates at 4:53 p.m. on July 21, 1997. At 5:12 p.m., after receiving the faxed purchase agreement, Johnson called Keller and left a message on Keller's answering machine informing him that his offer had been accepted. In *Keller v. Bones*, 260 Neb. 202, 615 N.W.2d 883 (2000), this court held that a valid contract for the purchase of the property in question existed between the Boneses and Keller.

On the morning of July 22, 1997, Lydic called the Boneses to inquire about the property. At that time, he was informed that a purchase agreement for the full listing price had already been signed. Lydic then informed the Boneses that Lydic Brothers would purchase the property at the same price. Calvin called Johnson at Agri Affiliates to inform him that they wished to sell to Lydic Brothers instead of Keller. The Boneses' desire to sell to Lydic Brothers was driven by the fact that under such a circumstance, the Boneses would be required to pay only a 1-percent commission, rather than the 6-percent commission if Keller purchased the property. Johnson testified that after he spoke to Calvin, he discussed the matter with Childears. Thereafter, Johnson left another message on Keller's answering machine, inquiring whether Keller would "let the Boneses out of the contract." Keller refused to do so and further requested Agri Affiliates to fax a copy of the purchase agreement to his attorney, which was done. Agri Affiliates also deposited Keller's earnest money check in its trust account.

Agri Affiliates brought this action in Lincoln County District Court for the payment of the 6-percent commission under the listing agreement. The Boneses' answer alleged several defenses, specifically, negligent misrepresentation, fraudulent misrepresentation, and breach of fiduciary duty. The Boneses also asserted a counterclaim against Agri Affiliates for (1) defense costs from *Keller, supra*; (2) loss of the opportunity to sell to Lydic Brothers; and (3) loss of the use of the net proceeds and interest that would have been earned from a sale to Lydic Brothers.

Both parties filed motions for summary judgment and offered evidence in support of their respective motions. The only objection to any of the evidence offered by either party was that of the Boneses to the affidavit of R.T. Marland, Jr., a real estate broker and appraiser. Both parties also requested the district court take judicial notice of the trial record from *Keller, supra.*

In an order entered August 29, 2001, the district court (1) granted Agri Affiliates' motion for summary judgment and (2) dismissed the Boneses' counterclaim and overruled their motion for summary judgment. In its order, the district court began its analysis of the pending motions by observing that *Keller, supra*, established the existence of a binding contract between Keller and the Boneses and that if the record did not support the Boneses' defenses, Agri Affiliates was entitled to its 6-percent commission. In reviewing the defenses alleged by the Boneses, the court initially considered the defense of negligent misrepresentation. Citing *Simon v. Wilkinson Agency*, 2 Neb. App. 877, 518 N.W.2d 154 (1994), the court concluded that since Nebraska did not recognize a claim for negligent misrepresentation in a real estate context, that defense would not be considered in analyzing the pending motions.

Next, after setting forth the elements of fraudulent misrepresentation, the court determined the evidence showed that Lydic Brothers had never made an offer to purchase the property at the list price. Therefore, the court reasoned, the statement by Johnson that Lydic Brothers was not interested in purchasing the property was not false, but "[i]n fact it was [a] truthful representation." Finally, the court determined the evidence established that Agri Affiliates appropriately marketed the property and used due diligence in finding a buyer, including notifying the tenant, Lydic

Brothers, and that therefore, Agri Affiliates had not breached any fiduciary duty it owed to the Boneses. The court then entered judgment for Agri Affiliates in the sum of $29,400 plus interest, overruled the Boneses' motion for summary judgment, and dismissed their counterclaim.

## ASSIGNMENTS OF ERROR

The Boneses assign, rephrased and renumbered, that the district court erred in (1) holding they could not raise the defense of negligent misrepresentation, (2) finding there was no genuine issue of material fact as to their allegations of fraudulent misrepresentation, (3) finding there was no genuine issue of material fact as to their allegations of breach of fiduciary duty, (4) granting Agri Affiliates' motion for summary judgment and entering judgment in favor of Agri Affiliates, (5) overruling their motion for summary judgment and dismissing their counterclaim, and (6) considering Marland's affidavit in granting Agri Affiliates' motion for summary judgment.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Herrera v. Fleming Cos., ante* p. 118, 655 N.W.2d 378 (2003). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Finch v. Farmers Ins. Exch., ante* p. 277, 656 N.W.2d 262 (2003).

## ANALYSIS

### RECOGNITION OF NEGLIGENT MISREPRESENTATION CLAIM

In their first assignment of error, the Boneses argue that the district court erred in refusing to consider their defense of negligent misrepresentation. The district court's order states:

One of the defenses asserted by the Defendants is that of negligent misrepresentation. However, the Nebraska Court

of Appeals has clearly held in the decision of *Simon v. Wilkinson Agency, Inc.*, 2Neb.App. 877, 518 N.W.2d 154 (1994) that the claim of negligent misrepresentation has been recognized in Nebraska only in the context of the relationship between an insured and his or her agent.

Neither the district court nor the parties to this action discuss this court's decision in *Gibb v. Citicorp Mortgage, Inc.*, 246 Neb. 355, 518 N.W.2d 910 (1994), decided approximately 1 month after *Simon v. Wilkinson Agency*, 2 Neb. App. 877, 518 N.W.2d 154 (1994). *Gibb* involved a purchaser of real estate who sued his real estate agency on, inter alia, a theory of negligent misrepresentation. In reversing the order of the district court sustaining Citicorp Mortgage's demurrer, we recognized Gibb's negligent misrepresentation theory of recovery as a viable basis of liability in the context of a real estate purchase and specifically adopted the definition of negligent misrepresentation found in the Restatement (Second) of Torts § 552 (1977). In the present case, the district court's determination that such "claim of negligent misrepresentation has been recognized in Nebraska only in the context of the relationship between an insured and his or her agent" was error. See, also, *NECO, Inc. v. Larry Price & Assocs.*, 257 Neb. 323, 597 N.W.2d 602 (1999) (reversing summary judgment in favor of vendor, finding that genuine issues of material fact existed as to whether statute of limitations had expired on buyer's claims of fraudulent and negligent misrepresentation with regard to whether building would contain complete sprinkler system). To the extent *Simon, supra,* holds otherwise, it is overruled. Finding such error, however, does not end our inquiry, as error without prejudice provides no ground for appellate relief. See *King v. Crowell Memorial Home*, 261 Neb. 177, 622 N.W.2d 588 (2001). Whether prejudicial error resulted from the trial court's failure to consider our holding in *Gibb, supra*, will be reviewed in conjunction with our consideration of the Boneses' second assignment of error.

ANALYSIS OF MISREPRESENTATION CLAIMS

In their second assignment of error, the Boneses contend the district court erred in failing to find a genuine issue of material

fact with regard to their claim of fraudulent misrepresentation. The Boneses contend Johnson's statement that Lydic Brothers was not interested in purchasing the real estate was known to be false and that therefore Agri Affiliates engaged in fraudulent misrepresentation.

█ To recover on a fraudulent misrepresentation claim, one must show:

(1) that a representation was made; (2) that the representation was *false*; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that [it] should [be relied] upon . . . ; (5) that the [party] reasonably did so rely; and (6) that he or she suffered damage as a result.

(Emphasis supplied.) *Gibb*, 246 Neb. at 360, 518 N.W.2d at 916.

█ To recover on a negligent misrepresentation claim, one must demonstrate, inter alia, that

"[o]ne who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies *false information* for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

(Emphasis supplied.) *Gibb v. Citicorp Mortgage, Inc.*, 246 Neb. 355, 370, 518 N.W.2d 910, 921 (1994). This court has concluded that

the difference between fraudulent misrepresentation and negligent misrepresentation is the duty required in each claim. In fraudulent misrepresentation, one becomes liable for breaching the general duty of good faith or honesty. However, in a claim of negligent misrepresentation, one may become liable even though acting honestly and in good faith if one fails to exercise the level of care required under the circumstances.

*Id.* at 371, 518 N.W.2d at 921. There is, however, a similarity between the two in that a necessary element of both is a showing that the statement was false. As a result, the initial inquiry into

whether the statement by Johnson was a misrepresentation is the same under either a negligent or a fraudulent misrepresentation framework, and we will consider them together.

Viewing the evidence in a light most favorable to the Boneses, and giving to them the benefit of all reasonable inferences deducible from the evidence, we determine the record contains no evidence that the statement made by Johnson regarding Lydic Brothers' interest in the property was false. In his testimony, Johnson stated that he had two telephone conversations with Lydic in July. Specifically, Johnson testified:

[The Boneses' counsel:] Do you remember the dates of the two phone conversations with Don Lydic?

A. No, sir. I can't quote them to you.

Q. But they were in late June or — or July of 1997?

A. I believe they were both in July.

. . . .

Q. The first phone conversation you had, what if anything do you remember about that conversation?

A. Just that I told him [Lydic] I knew that he and his brothers were the tenants on there and that we had activity on it and if he wanted to do anything please let us know or let the Boneses know. We needed to know what his intentions were.

Q. What do you recall his response being if any?

A. His response was "At that price we're not interested."

Q. And what price was that?

A. The $490,000.

Q. So you called him later in July then. Do you remember when that conversation was?

A. It was just prior to the Keller offer and I was telling him once again that I was in the process to go visit with a person I thought was going to make a very good offer and was he interested, and that's when he told me I believe that they had already made an offer on the property and they were not interested in making a higher offer at that time. They thought the price was too high.

Q. [Lydic] told you they had already made an offer on the property?

A. $190 an acre.

Q. And who had they made that offer to?

A. The Boneses.

. . . .

Q. Why didn't you call him after you had the $490,000 offer?

A. Because immediately prior to that offer he had completely rejected it. They were not going to make an offer. I had no reason to call him back.

There is no genuine issue of material fact in the record which refutes Johnson's assertion. With respect to the first telephone conversation in which it is claimed Lydic said that "[a]t that price we're not interested," the record is devoid of evidence raising any inference that Lydic did not make such a statement to Johnson. With respect to the second conversation occurring "just prior to the Keller offer," Lydic's version of that same telephone conversation was as follows:

[Lydic:] He told me he was on his way to a guy who said he would sign a, or, he said "I'm on my way to see a guy that says he will give the full price."

Q And you knew from receiving Exhibit 36 and Exhibit 12 that the full price meant at least $245 an acre, is that right?

A It would be the $245 an acre.

The record discloses that Lydic's response to this second telephone conversation was simply, " 'Loren, that's a lot of money, you know.' " While it is true that Lydic testified he "thought" he would have the opportunity to match any offer made on the property, the record shows such "thought" was the result of a letter received from Audrey. The record does not contain evidence, even when viewed in a light most favorable to the Boneses, that anyone at Agri Affiliates made such representation to him. Furthermore, Lydic acknowledged that Lydic Brothers did not have a right of first refusal on the property.

The district court did not err in finding there was no genuine issue of material fact to support the Boneses' allegation that Agri Affiliates made a false representation to them. As there is no evidence in the record to indicate that the statement made by Johnson to the Boneses was false, the district court's error in failing to consider the Boneses' claim of negligent misrepresentation resulted

in no prejudice. There is no merit to the Boneses' second assignment of error.

## Breach of Fiduciary Duty

In their third assignment of error, the Boneses argue the district court erred in failing to find a genuine issue of material fact with regard to their allegation that Agri Affiliates had breached its fiduciary obligation. The Boneses contend that Agri Affiliates breached its fiduciary obligation in the following ways: (1) faxing a copy of the signed purchase agreement to Keller's attorney; (2) failing to inform the Boneses they were under no legal obligation to proceed with the sale to Keller, since no written communication of acceptance had been made to Keller; (3) failing to inform the Boneses of the difference in net proceeds due to the varying commissions; (4) failing to actively pursue a sale of the property to Lydic Brothers; and (5) making various misrepresentations to the Boneses.

A real estate seller's agent has a duty:

(a) To perform the terms of the written agreement made with the client;

(b) To exercise reasonable skill and care for the client;

(c) To promote the interests of the client with the utmost good faith, loyalty, and fidelity, including:

(i) Seeking a price and terms which are acceptable to the client, except that the licensee shall not be obligated to seek additional offers to purchase the property while the property is subject to a contract for sale or to seek additional offers to lease the property while the property is subject to a lease or letter of intent to lease;

(ii) Presenting all written offers to and from the client in a timely manner regardless of whether the property is subject to a contract for sale or lease or a letter of intent to lease;

(iii) Disclosing in writing to the client all adverse material facts actually known by the licensee; and

(iv) Advising the client to obtain expert advice as to material matters about which the licensee knows but the specifics of which are beyond the expertise of the licensee;

(d) To account in a timely manner for all money and property received;

(e) To comply with all requirements of sections 76-2401 to 76-2430, the Nebraska Real Estate License Act, and any rules and regulations promulgated pursuant to such sections or act; and

(f) To comply with any applicable federal, state, and local laws, rules, regulations, and ordinances, including fair housing and civil rights statutes and regulations.

Neb. Rev. Stat. § 76-2417(1) (Reissue 1996). See, Neb. Rev. Stat. § 76-2429 (Reissue 1996); *Ruble v. Reich*, 259 Neb. 658, 611 N.W.2d 844 (2000) (recognizing that § 76-2417(1) supersedes common-law duties and responsibilities of parties to real estate agreement). The question is whether there is a genuine issue of material fact that Agri Affiliates' conduct breached any fiduciary obligation recognized in § 76-2417(1).

This court concluded in *Keller v. Bones*, 260 Neb. 202, 615 N.W.2d 883 (2000), that a binding contract existed between Keller and the Boneses for the sale of this real estate. As a result, the first two claims upon which the Boneses contend Agri Affiliates breached its fiduciary duties are controlled by our holding in *Keller, supra*. First, since we determined in *Keller, supra*, that a binding contract existed between the Boneses and Keller, Keller had a right to a copy of the agreement evidencing such purchase. Therefore, there can be no breach of fiduciary duty in faxing a copy to Keller's attorney. See § 76-2417(1)(e) (requiring compliance with Nebraska Real Estate License Act and Neb. Rev. Stat. § 81-885.24(20) (Reissue 1996) of such act, making failure to deliver copy of purchase agreement to both purchaser and seller unfair trade practice). Second, since our holding in *Keller, supra*, determined that the Boneses had legally accepted Keller's terms, there was a legal obligation on the Boneses' behalf to proceed with the sale to Keller. There is no merit to the Boneses' first two assertions that Agri Affiliates breached a fiduciary duty owed to them.

The remainder of the Boneses' allegations are similarly unsupported by the record. The Boneses' third assertion claims that Agri Affiliates breached its fiduciary duty by failing to inform them of the difference in net proceeds due to the varying commissions in the reservation clause. The reservation clause reads: "Seller reserves current Tenant from this listing for six (6)

months from date of Seller's signature. If Tenant is successful buyer within said six months, Broker will close the sale and receive 1% commission." The record is undisputed that the reservation clause and "split sales commission" was an amendment to Agri Affiliates' usual listing agreement specifically requested by the Boneses. The record further shows that after Agri Affiliates prepared the reservation clause, the Boneses were given an opportunity to have it reviewed by their attorney, and, as Calvin testified: "I think I may have had [an attorney] from Council Bluffs review it. Q. He's your — an attorney? A. He's an attorney. Q. That does work for you? A. Yes." The reservation clause was inserted at the Boneses' request and is not ambiguous. There is no genuine issue of material fact in the record to support the Boneses' claim of a fiduciary breach as set forth in their third assertion.

In their fourth assertion, the Boneses claim Agri Affiliates breached its fiduciary duty by failing to actively pursue a sale of the property to Lydic Brothers. Assuming without deciding that the listing agreement between the parties required such pursuit, we determine the record is similarly devoid of any evidence that Agri Affiliates failed in the manner claimed by the Boneses. After the listing agreement was signed, the record is again undisputed that on at least two occasions, representatives of Agri Affiliates advised Lydic Brothers of offers received on the property. Regarding such occasions, Lydic testified:

[The Boneses' counsel:] Backing up to the call you got from Mike Polk, at that time when he told you he had an offer for $220 an acre do you remember what your response to him was?

A I told him I think that we were interested in it, but why, you know, should [we] bid against ourselves or, that's what I remember, again, you know.

Q Did he tell you whether or not he would be calling you back about the property?

A No.

Q Did you ask him to call you back if there was any more activity?

A Not that I recollect.

. . . .

[Agri Affiliates' counsel:] All right. And then you got another call, at least one other call, from Loren Johnson on July 17th telling you that he's about to get a signed offer for the full price, didn't you?

A Now, this was like the 12th, or he was the first person that called.

Q I'm sorry?

A Mike Polk would have called first.

Q Okay. Mike Polk called. Then you got a call from Loren where he's out on the place?

. . . .

A Yes.

. . . .

Q Well, let me ask this. At any time when you had a conversation with Loren Johnson did you say, "I'll match any offer you get?" Did you ever say that?

A I didn't know I was supposed to.

Q Just answer the question, sir. Did you say that at any time?

A No.

Contrary to the Boneses' allegation, the record shows that Agri Affiliates did pursue a sale of the property to Lydic Brothers. The Boneses assertion to the contrary is not supported by the evidence in this record or any reasonable inferences deducible therefrom.

Finally, the Boneses assert that Agri Affiliates breached its fiduciary duty by making various misrepresentations to them. Basically the Boneses argue in their brief that Agri Affiliates, through Johnson, (1) misrepresented Lydic Brothers' interest in purchasing the property and (2) further misrepresented that the Boneses would be obligated to pay a full 6-percent commission to Agri Affiliates even if the Boneses chose to not sell to Keller.

Having previously determined there is no evidence from which to conclude that Johnson's statement to the Boneses regarding Lydic Brothers' interest in purchasing the property was false, we now determine the Boneses first assertion is without merit.

■ With respect to the Boneses' second assertion, this court has previously stated:

> When the broker secures a prospective buyer who is ready, willing, and able to purchase the subject property, the person

who hired the broker has received the service for which he or she has contracted, and the broker's right to compensation cannot be impaired by either the subsequent inability or unwillingness of a purported owner to consummate the sale on the terms prescribed.

*Marathon Realty Corp. v. Gavin*, 224 Neb. 458, 462, 398 N.W.2d 689, 693 (1987) (citing *Wisnieski v. Coufal*, 188 Neb. 200, 195 N.W.2d 750 (1972)). Thus, even if Johnson did make such a representation, it would not be false, as Agri Affiliates, in accordance with the listing agreement, produced a ready, willing, and able buyer at the full listing price.

Viewing the evidence in a light most favorable to the Boneses and giving to them the benefit of all reasonable inferences deductible therefrom, we determine there is no evidence to support their assertion that the conduct of Agri Affiliates breached any fiduciary duty owed to them. See § 76-2417(1). There is no merit to the Boneses' third assignment of error.

## DISTRICT COURT'S RULINGS ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

In their fourth and fifth assignments of error, the Boneses contend the district court erred in granting Agri Affiliates' motion for summary judgment and in overruling the Boneses' motion for summary judgment. Having previously determined that the district court did not err in granting Agri Affiliates' motion for summary judgment, we determine the Boneses fourth assignment of error is without merit.

In their fifth assignment of error, the Boneses assert the district court erred in failing to grant their motion for summary judgment on their counterclaim. The theory upon which the Boneses sought summary judgment was, in essence, the same as that espoused in opposing Agri Affiliates' motion. That is, as a result of Agri Affiliates' misrepresentation and breach of fiduciary duties, the Boneses were entitled to damages. Having previously considered the evidence as it relates to the Boneses' opposition to Agri Affiliates' motion, and determining, after viewing the evidence in a light most favorable to the Boneses, that the record does not support their assertions, we likewise determine the district court did not err in overruling the Boneses'

motion for summary judgment and in dismissing their counter-claim. The Boneses' fifth assignment of error is without merit.

### AFFIDAVIT OF MARLAND

Finally, in their sixth assignment of error, the Boneses argue the district court erred in admitting and considering the affidavit of Marland. In his affidavit, Marland, who was Agri Affiliates' expert, stated that in his opinion, Agri Affiliates appropriately exposed and marketed the Boneses' property, used due diligence to find a buyer at the full listing price and, in fact, found such a buyer in Keller. Marland further opined that "there was no mis-representation or breach of fiduciary duty on the part of [Agri Affiliates] in its representation of the [Boneses]."

The Boneses contend that Marland's affidavit violated Neb. Rev. Stat. § 25-1334 (Reissue 1995) in that it was not based upon personal knowledge and included both hearsay and legal conclusions. Section 25-1334 states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters stated therein."

In their brief, the Boneses assert the following: "While [Agri Affiliates] may rely on the Marland affidavit to oppose [the Boneses'] Motion for Summary Judgment, the Court inappro-priately relied on the affidavit in granting summary judgment in favor of [Agri Affiliates]." Brief for appellants at 32. Thus, this court is concerned only with the district court's reliance on this affidavit with respect to its granting of Agri Affiliates' motion for summary judgment and not with respect to the overruling of the Boneses' motion.

Ordinarily, the erroneous admission of evidence in a sum-mary judgment hearing is not reversible error if other relevant evidence, admitted without objection or properly admitted over objection, sustains the trial court's necessary factual findings. *Stiver v. Allsup, Inc.*, 255 Neb. 687, 587 N.W.2d 77 (1998).

Assuming, arguendo, that the district court did improperly admit and rely upon Marland's affidavit in granting Agri Affiliates' motion for summary judgment, such is not prejudi-cial error requiring reversal. This court has already concluded,

without reliance on Marland's affidavit, that the record is sufficient to sustain the district court's granting of summary judgment in favor of Agri Affiliates. The Boneses' sixth assignment of error is without merit.

## CONCLUSION

The judgment of the district court is affirmed.

AFFIRMED.