BIG RIVER CONSTRUCTION COMPANY, APPELLEE, V.
L & H PROPERTIES, INC., APPELLANT.
681 N.W.2d 751

Filed June 25, 2004.   No. S-02-1361.

Timothy W. Nelsen, of Fankhauser, Nelsen & Werts, P.C., for appellant.

John J. Horan, of Brandt, Horan, Hallstrom, Sedlacek & Stilmock, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.
## I. INTRODUCTION
Big River Construction Company (Big River) brought an action to recover for the value of improvements made to property it had leased from L & H Properties, Inc. (L & H), which filed a cross-petition alleging that Big River had committed waste to the property. The district court found in favor of Big River and dismissed L & H's cross-petition. L & H appeals.

## II. BACKGROUND
Big River entered into a lease agreement to lease property located in Nebraska City, Nebraska, from L & H. The lease term ran from August 1, 1991, to July 31, 2001, with rent of $1,200 due annually on August 1.

The relevant provision of the lease is as follows:

LESSOR'S RIGHT TO TERMINATE LEASE AND IMPROVEMENTS PURCHASE.

If the [president of Big River] dies or becomes disabled during the term of this lease, or any extension thereof, the Lessee may assign this lease or sublet the property subject to the approval of the assignee or sublessee, by the Lessor. If the Lessor does not approve the assignee or sublessee designated by the Lessee, this lease shall be deemed terminated and the Lessor shall pay to the Lessee compensation for the improvements made upon the premises. The amount of compensation to be paid for the improvements shall be determined by an appraisal made of the property. From that appraisal shall be deducted the value of the ground and the depreciation of the improvements claimed by the Lessee in its accounting procedure and reported on its federal income tax return for each year. Any prepaid rent shall be repaid or credited to the Lessee upon the lease termination. It is understood that the Lessee intends to depreciate the cost of the shop building over a period of thirty years. Upon the termination of the lease term, the Lessor shall pay Lessee for the improvement at a cost determined by the formula set forth above.

The record indicates that initially, the parties were agreeable to renewing the lease at the end of the 10-year lease term. Ultimately, however, Big River decided to vacate the premises and did so on August 11, 2001. Cleon Popelka, president of Big River, testified that he notified Howard Bebout, president of L & H, that Big River had vacated the premises.

During the term of the lease, and pursuant to its authority under the lease, Big River erected a shop building on the leased property. Subsequent to Big River's vacating the property, Big River filed a petition alleging that L & H breached the lease agreement by failing to pay Big River for the value of that improvement. In its answer, L & H denied that it owed Big River for the improvement and filed a cross-petition alleging that Big River had committed waste to the property.

L & H moved for summary judgment. The district court denied that motion. Following a bench trial, the court found in favor of Big River, and explained its reasoning from the bench:

[T]he attorney that drafts the lease is — if there is ambiguity, it's construed against his client. As it turns out, the law firm probably represented both sides at this time, and so it wouldn't be proper to construe any ambiguities against the — either side.

Having said that — and I've looked back over that lease a number of times since the summary judgment, and I am not really certain that there is an ambiguity. . . .

But Paragraph 9 can make a lot of sense if, instead of having one simple paragraph, you got two paragraphs with the last sentence being a second paragraph. And unless you read it that way, the lease doesn't make any sense at all.

. . . .

. . . [M]y conclusion is that it's clear enough for my purposes that the lease provided that there was going to be payment for the improvements if there was, under the first scenario, the death or disability of Mr. Popelka.

Under the second scenario, there was going to be payment on termination of the lease term. And the termination of the lease term in the second scenario, it still goes back to a formula that's set forth in the — under the first scenario.

The district court then proceeded to value the improvements at $30,000. After deducting $6,169.82 for depreciation, the court awarded Big River $23,831.18 plus court costs. L & H appeals.

### III. ASSIGNMENTS OF ERROR

L & H assigns, rephrased and renumbered, that the district court erred in (1) denying L & H's motion for summary judgment; (2) determining that the lease contract was ambiguous; (3) admitting parol evidence, including the testimony of both Popelka and the attorneys involved in the initial drafting and execution of the lease agreement, without first determining that the lease contract was ambiguous; (4) admitting the testimony of the attorneys involved in the initial drafting and execution of the lease agreement when such testimony was subject to the attorney-client privilege; (5) awarding Big River damages without sufficient proof; (6) accepting the opinion of Big River's appraiser with regard to the value of improvement without deducting the value of the ground and the depreciation of the improvement; and (7) denying L & H's motion for new trial.

## IV. STANDARD OF REVIEW

The meaning of a contract and whether a contract is ambiguous are questions of law. *Wood v. Wood*, 266 Neb. 580, 667 N.W.2d 235 (2003). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.*

## V. ANALYSIS

### 1. MOTION FOR SUMMARY JUDGMENT

In its first assignment of error, L & H argues that the district court erred in not granting its motion for summary judgment.

We have repeatedly stated that a denial of a motion for summary judgment is an interlocutory order, not a final order, and therefore not appealable. *Pennfield Oil Co. v. Winstrom*, 267 Neb. 288, 673 N.W.2d 558 (2004). The only exception we have fashioned to this general rule is that when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as the court deems just. *Unisys Corp. v. Nebraska Life & Health Ins. Guar. Assn.*, 267 Neb. 158, 673 N.W.2d 15 (2004).

Absent the above-stated exception, the denial of a motion for summary judgment is neither appealable nor reviewable; thus we need not consider the district court's denial of L & H's motion for summary judgment. The overruling of a motion for summary judgment does not decide any issue of fact or proposition of law affecting the subject matter of the litigation, but merely indicates that the court was not convinced by the record that there was not a genuine issue as to any material fact or that the party offering the motion was entitled to judgment as a matter of law. *Moyer v. Nebraska City Airport Auth.*, 265 Neb. 201, 655 N.W.2d 855 (2003).

L & H's first assignment of error is without merit.

### 2. AMBIGUITY OF CONTRACT

In its second assignment of error, L & H argues that the district court erred in determining that the lease contract was ambiguous.

L & H argues that the lease is unambiguous in providing that under the facts presented, Big River was not entitled to payment for improvements made to the leased property.

The district court, in its oral findings, stated that it was "not really certain that there [was] an ambiguity [in the lease]." However, L & H argues that the "district court clearly re-drew the Lease with Option," when it concluded that the last sentence of paragraph 9 of the lease should be read as its own separate paragraph. Brief for appellant at 14. As a result, L & H argues the district court must have concluded that the lease was ambiguous.

The meaning of a contract, and whether a contract is ambiguous, are questions of law. *Wood v. Wood*, 266 Neb. 580, 667 N.W.2d 235 (2003). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.* The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous. *Id.*

When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. *Trimble v. Wescom*, 267 Neb. 224, 673 N.W.2d 864 (2004). A contract must be construed as a whole, and, if possible, effect must be given to every part thereof. *Guerrier v. Mid-Century Ins. Co.*, 266 Neb. 150, 663 N.W.2d 131 (2003).

Given the above-stated propositions of law, this court must independently review the lease agreement and make our own determination as to whether the agreement was ambiguous. The court did not, as alleged in the second assignment of error, find that the lease was ambiguous.

A plain and ordinary reading of paragraph 9 reveals that payment for improvements arises under two different sets of circumstances. In the first instance, Big River was entitled to payment for the improvements made to the leased property under the formula contained in paragraph 9 if (1) Popelka died or became disabled and (2) Big River leased or sublet the property to another party without L & H's approval of the assignee or sublessee. In the second instance, Big River was entitled to payment

for the improvements "[u]pon the termination of the lease term," as determined by the formula in paragraph 9.

Lending support to the conclusion reached by the district court that paragraph 9 provides for payment under two different sets of circumstances is the fact that L & H's reading makes several other lease provisions redundant and useless. L & H argues that Big River is entitled to payment for the improvements only in the event of Popelka's death or disability and L & H's subsequent disapproval of Big River's assignee or sublessee. L & H's interpretation renders the last sentence of paragraph 9 a mere restatement of the second sentence of the paragraph. If, however, the district court was correct in interpreting the last sentence as requiring L & H to pay for improvements upon "the termination of the lease term," that reading would give meaning and effect to the last sentence of paragraph 9.

L & H's interpretation also renders paragraph 13 of the lease unnecessary. Paragraph 13 provides that if Big River defaults, the "Lessee shall not be entitled to payment for the improvements placed upon said property." If the second sentence of paragraph 9 outlines the only circumstance under which Big River was entitled to payment for reimbursement, then additionally restricting Big River's right to payment for improvements as is done in paragraph 13 would not be necessary. If, however, the last sentence of paragraph 9 were read to mean that any termination of the lease provided for payment by L & H to Big River, paragraph 13 would simply qualify Big River's right to payment when Big River was in default of the agreement.

Upon our own independent review of this lease, we determine that it is unambiguous. We determine that the district court did not err in concluding that Big River was entitled to payment for improvements made to the leased property pursuant to paragraph 9 of the lease agreement. L & H's second assignment of error is without merit.

### 3. ADMISSION OF PAROL EVIDENCE

In its third assignment of error, L & H argues that the district court erred in admitting portions of Popelka's testimony, as well as portions of the testimony of the attorneys involved in the initial drafting and execution of the lease agreement as to their

interpretation of paragraph 9 of the lease. L & H argues that this testimony was inadmissible parol evidence.

■ Unless a contract is ambiguous, parol evidence cannot be used to vary its terms. In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Sack Bros. v. Tri-Valley Co-op*, 260 Neb. 312, 616 N.W.2d 786 (2000).

We have determined that the lease contract was unambiguous. As a result, parol evidence was inadmissible and the district court erred in admitting the portions of Popelka's testimony, as well as the portions of the testimony of the attorneys involved in the initial drafting and execution of the lease agreement. These witnesses each opined as to their interpretation of paragraph 9 of the lease contract.

■ As a general rule, however, to constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about such evidence admitted or excluded. *State ex rel. City of Alma v. Furnas Cty. Farms*, 266 Neb. 558, 667 N.W.2d 512 (2003). We determine that the admission of the parol evidence did not unfairly prejudice L & H since we determined, without reference to any of the disputed parol evidence, that the last sentence of paragraph 9 unambiguously provided for payment to Big River for improvements made to the property upon the termination of the lease. Error without prejudice provides no ground for appellate relief. *Agri Affiliates, Inc. v. Bones*, 265 Neb. 798, 660 N.W.2d 168 (2003). We also note that in the district court's findings, it did not rely on this parol evidence.

L & H's third assignment of error is without merit.

### 4. ATTORNEY-CLIENT PRIVILEGE

In its fourth assignment of error, L & H argues that the district court erred in admitting testimony of the attorneys involved in the initial drafting and execution of the lease agreement because such testimony was subject to the attorney-client privilege.

Assuming without deciding that the testimony at issue was privileged and that it was error for the district court to allow such testimony, we nevertheless conclude that the admission of this parol evidence was not prejudicial to L & H. Such testimony

was unnecessary in our determination that the lease contract was unambiguous. See *Agri Affiliates, Inc. v. Bones, supra.*

L & H's fourth assignment of error is without merit.

## 5. DAMAGES

In its fifth and sixth assignments of error, L & H argues that the district court erred in awarding damages despite the lack of sufficient proof and in accepting Big River's appraisal as the value of the property. The district court awarded Big River damages in the amount of $23,831.18.

The amount of damages to be awarded is a determination solely for the fact finder, and the fact finder's decision will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. *Brandon v. County of Richardson*, 264 Neb. 1020, 653 N.W.2d 829 (2002). On appeal, the fact finder's determination of damages is given great deference. *Id.*

### (a) Date of Appraisal

In its fifth assignment of error, L & H argues that the $30,000 value testified to by Big River's appraiser, George Tesar, Jr., was not sufficient proof of the value of the building because the appraisal reflected the value on March 7, 2002, not July 31, 2001.

At trial, L & H objected to Tesar's appraisal on the basis of foundation and relevance. The district court overruled the foundation objection and overruled the relevancy objection "at the present time on relevancy, subject to a motion to strike if there is no relationship back to the appropriate date." Tesar then testified to his $30,000 appraisal of the leased property on March 7, 2002. In its oral findings, the district court stated:

> There is testimony in, and there is testimony in that the value of the improvements as of March 7th of 2002 w[as] $30,000.
>
> I received that testimony and indicated at the time that objections on foundation and relevancy were overruled subject to a motion to strike. There was never a motion to strike made. So I do have in front of me testimony that the value of the leasehold improvements — and that obviously means improvements after the deduction of the ground. The value of the ground was $30,000 as of March 7th.

I think it's within my prerogative as a finder of fact to assume that they were at least that much as of July 31st of 2001. There was no testimony or evidence at all that there was any waste or — committed on the property that required any kind of substantial payment by . . . Bebout.

Although the district court did not expressly refer to Neb. Rev. Stat. § 27-104(2) (Reissue 1995), it appears its ruling with regard to Tesar's appraisal testimony was based on this statute. That statute provides "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." This court in *Reavis v. Slominski*, 250 Neb. 711, 724-25, 551 N.W.2d 528, 540 (1996), noted that

"[t]he everyday method of handling the situation when the adversary objects to the relevancy or the competency of the offered fact is to permit it to come in conditionally, upon the assurance, express or implied, of the offering counsel that [he] will 'connect up' the tendered evidence by proving, in the later progress of his case, the missing facts. . . ."

. . . The burden is on the objecting party to object if the offering counsel fails to connect up, and this is generally done with a motion to strike.

Following L & H's objection to Tesar's testimony, it was proper for the district court to overrule the objection and allow Big River to "connect up" the period of time between March 7, 2002, and the July 31, 2001, expiration of the lease. If L & H believed that Big River's counsel did not adequately show the relationship of the appraisal back to the expiration of the lease term, it should have made a motion to strike Tesar's testimony on that point. No such motion to strike was made. As a result, Tesar's appraisal was properly before the district court, and the district court did not err in relying on the appraisal in determining the value of Big River's improvement.

We determine that L & H's fifth assignment of error is without merit.

### (b) Tesar's Testimony

In its sixth assignment of error, L & H argues that the district court also erred in accepting Tesar's appraisal because his

testimony indicated that he had not deducted from his appraisal the value of the ground or the depreciation taken by Big River on its federal tax return.

Paragraph 9 of the lease agreement provides the formula by which the value of improvements made to the leased property should be calculated. It provides in relevant part:

> The amount of compensation to be paid for the improvements shall be determined by an appraisal made of the property. From that appraisal shall be deducted the value of the ground and the depreciation of the improvements claimed by the Lessee in its accounting procedure and reported on its federal income tax return for each year.

To support its contention that Tesar did not deduct either the value of the land or depreciation in conducting his appraisal, L & H directs us to a portion of L & H's cross-examination of Tesar:

> [L & H's counsel:] [D]id you, when you did the appraisal of the property, deduct the value of the ground and depreciation of improvements claimed by the lessee in its accounting procedure and reported on its federal income tax return for each year?
>
> [Tesar:] Did I depreciate?
>
> Q. When you did this appraisal, did you deduct the value of the ground and the depreciation of the improvements claimed by the lessee in its accounting procedure and reported on its federal income tax return for each year?
>
> A. No.

L & H overlooks another portion of Tesar's testimony. On direct examination, Tesar testified:

> [Big River's counsel:] All right. When you did your appraisal, did you arrive at a figure, then, with respect to the improvements?
>
> [Tesar:] Yes.
>
> Q. The value? And at the time you did it, was — did you separate out the real estate that it was situated on? Is your appraisal based strictly on the value of the improvements, the building that you appraised?
>
> . . . .
>
> A. Yes.

Q. Okay. And you do have an opinion with respect to the fair market value of that property, do you —

A. Yes, I do.

Q. — on March 7, 2002? And what is your opinion of the fair market value of that property on that date?

. . . .

A. $30,000.

Tesar's testimony on direct examination indicates that the value of the ground was deducted from the appraisal he conducted. Tesar's testimony on cross-examination shows that he did not deduct depreciation, but does not contradict his testimony on direct examination that the value of the ground was deducted. On cross-examination, Tesar was asked whether he deducted both the value of the ground and depreciation from his appraisal. In testifying, Tesar clarified L & H's question, stating "[d]id I depreciate?" before answering "[n]o." Given the phrasing of L & H's question to Tesar on cross-examination, as well as Tesar's attempt at clarification, Tesar's cross-examination testimony is consistent with his direct testimony, and it was proper for the district court to rely on Tesar's appraisal to establish the value of the improvement.

In addition, Big River established the depreciation of the improvement through Popelka's testimony: "[Big River's counsel:] . . . Is it true also that your CPA's had depreciated that on your income tax return and had taken $5,520.80 in depreciation? [Popelka:] I believe that's right. Q. Up to that period of time? A. I believe that's right." L & H also offered an asset depreciation form from Big River's tax return listing depreciation on the building at $6,169.82.

The lease provided, "From [the] appraisal shall be deducted the value of the ground and the depreciation of the improvements . . . ." Tesar's testimony was sufficient to establish that his appraisal was the value of the building alone. The terms of the lease did not preclude establishing depreciation separately from the appraisal of the improvement. Big River offered evidence of an appraisal which excluded the value of the land. Big River and L & H both offered evidence of the depreciation Big River had taken on the improvement. We conclude that the valuation formula of the lease

agreement was followed and that the district court did not err in the damages it awarded to Big River.

L & H's sixth assignment of error is without merit.

### 6. MOTION FOR NEW TRIAL

In its seventh and final assignment of error, L & H argues that the district court erred in failing to grant its motion for a new trial.

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Perry Lumber Co. v. Durable Servs.*, 266 Neb. 517, 667 N.W.2d 194 (2003). The district court found that the lease agreement was unambiguous and that Big River was entitled to a judgment in the amount of $23,831.18. Upon our review of the record and the applicable law, we conclude that the district court did not abuse its discretion in not granting L & H's motion for a new trial.

L & H's seventh assignment of error is without merit.

### VI. CONCLUSION

The decision of the district court is affirmed.

AFFIRMED.