25 N.J. Super. 210 (1953)
95 A.2d 753
FRIEDA KUVIN EPSTEIN, EXECUTRIX, ETC., AND ANOTHER, PLAINTIFFS-RESPONDENTS,
v.
HERBERT KUVIN, AND OTHERS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 2, 1953.
Decided March 23, 1953.
*211 Before Judges EASTWOOD, BIGELOW and JAYNE.
Mr. Max M. Albach argued the cause for the respondents.
Mr. Harry Green argued the cause for the appellants.
The opinion of the court was delivered by BIGELOW, J.A.D.
We must construe the following clause in the last will and testament of Mrs. Fannie Kuvin:
"Should I die before my grandson, Sanford Kuvin, has completed his college education, then and in that event I direct that my son Samuel Kuvin, contribute the sum of $600. per annum toward the expense of a college education for my grandson Sanford Kuvin, and that my son Herbert Kuvin contribute the sum of $400. per annum toward the expense of a college education for my grandson, Sanford Kuvin. The sums shall be contributed as aforesaid until my grandson, Sanford Kuvin, completes his college education."
The sons of testatrix made the required contributions until their nephew completed his four-year undergraduate course culminating in the degree of bachelor of arts. He has now begun another four-year course leading to the degree *212 of doctor of medicine. The testatrix directed her sons to contribute toward the expense of her grandson's college education. What did she mean by that expression? Is the cost of medical school included?
The trial court received, over objection, testimony of the draftsman of the will, relating conversations with testatrix, in which she mentioned her strong wish that Sanford become a doctor, and said that she was making provision in her will so that her sons would contribute to his education "until he became a doctor." Sanford's mother was allowed to testify that a month or two prior to the date of the will, testatrix told her "that she would see to it that the boy got an education," and the witness added, "Yes, she said it was a medical education." And that later testatrix told her "that she had made provision that this boy would become a doctor." Testimony of this sort was received from several other witnesses. Clearly it was incompetent.
Our statute of wills requires a will to be in writing. N.J.S. 3A:3-2. The rules touching the admission and use of extrinsic evidence in aid of the interpretation of a will were summarized in Fidelity Union Trust Co. v. Noll, 125 N.J. Eq. 106 (Ch. 1939):
"I. The testator's declarations regarding his testamentary intentions are inadmissible except in case of latent ambiguity in the naming of a person or thing in the will, when such declarations may be proved to identify the person or thing.
II. Proof is generally admissible of the situation existing when the will was made  the surroundings of the testator, his property and the condition of the persons taking under his will. Such proof is used to enable the court to understand the meaning and application of the language found in the will.
III. But extrinsic evidence is not allowed to override the will or to set up an intention inconsistent with it. Where the intention of the testator, as disclosed by the will, is entirely clear  where, as it is sometimes put, there is no room for construction  the court will disregard or may even refuse to hear evidence of surrounding circumstances. In other words, the court will not reform a will under guise of construing it."
The receipt of evidence of a testator's declarations of what he intended by the language used in his will and how he *213 intended to dispose of his property, was condemned very recently in In re Armour, 11 N.J. 257 (1953).
Little proof was submitted concerning the situation existing when Mrs. Kuvin made her will. She had two grown sons, one of whom had received a high school education and the other had taken an engineering course, and later had studied law at night while working in the daytime. Testatrix also had a married daughter, who worked as a police matron. The daughter and the latter's two sons, Seymour and Sanford, lived with testatrix. Sanford was a senior in high school at the date of the will, and at the time of testatrix' death, he was a freshman in New York University. According to the evidence, testatrix was very fond of her grandson Sanford.
By her will testatrix devised to her grandchildren, Seymour and Sanford, a parcel of land in Newark, subject to a life interest which she gave to their mother; to her also she left her personal property, and to the two sons of testatrix, the residue of her realty. Such is the general outline of the will. The value of testatrix' estate or the various components thereof is not shown.
The extrinsic evidence aids little, if at all, in interpreting the will, so we must adopt what we believe is the meaning commonly attached to the term, "a college education." Traditionally, a student in New Jersey climbs the educational ladder from grammar school, through high school, to college, in which a four-year course leads to a bachelor's degree in liberal arts or science, or to an engineering degree; and last, the youth may enter a graduate school, such as a school of medicine. We are aware, of course, of many variations in the scheme and in the use of the word "college." Yet we believe that the great majority of people, when they say that this member of the family or that acquaintance had a college education or has a college degree, mean that he has taken a regular course of study on the undergraduate level that is open to students coming directly from high school; and that he has been awarded the bachelor's degree to which the course leads, and so completed *214 his college education. It is in this sense, as we are persuaded, that Mrs. Kuvin used these terms in her will. Her sons are not obligated to contribute to Sanford's medical education. Cf. In re Kelly's Estate, 285 N.Y. 139, 33 N.E.2d 62 (Ct. App. 1941), and Shepard v. Union & New Haven Trust Co., 106 Conn. 627, 138 A. 809 (Sup. Ct. Err. Conn. 1927).
Judgment is reversed.