MICHAEL D. WOOD, APPELLANT AND CROSS-APPELLEE, V.
JUDY L. WOOD, APPELLEE AND CROSS-APPELLANT.
667 N.W.2d 235

Filed August 8, 2003.    No. S-02-244.

Claude E. Berreckman, Jr., of Berreckman & Berreckman, P.C., for appellant.

Timothy P. Brouillette, of Elliott & Brouillette, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Appellant Michael D. Wood and appellee Judy L. Wood entered into a settlement agreement as part of their 1993 divorce. As part of the agreement, Michael was obligated to pay one-half the educational expenses of their children's post high school education. Judy alleges that Michael failed to pay for some of his obligation under this agreement. Judy applied to the district court for a modification of the decree and for a judgment enforcing the settlement agreement. After a bench trial, the court construed the agreement to obligate Michael to pay for one-half the education of his children, including those children past the age of majority, but for only 4 years of post high school education. Michael appeals, and Judy cross-appeals. With a minor monetary modification, we affirm the judgment of the district court.

## FACTUAL BACKGROUND

Michael and Judy were married and had three children: Brandon, born September 3, 1981; Tiffany, born July 28, 1983; and Jeremy, born January 10, 1985. On February 9, 1993, a divorce decree was entered by the district court which incorporated a settlement agreement signed by both parties. After a description of the three children, paragraph B4 of that agreement reads: "In the event, any of said children shall elect to pursue further education after graduation from high school, including college or vocational training, the husband agrees to be responsible for one-half of such expenses for each child, including tuition, books, and room and board." By the time of trial, Brandon had attended the University of Montana and Tiffany

had attended Hastings College, both accruing related expenses. Jeremy was still in high school. Michael has not paid one-half of some of these college expenses which, Judy alleges, is a violation of the settlement agreement. On June 21, 2001, Judy filed an application for modification of decree and judgment, seeking a judgment against Michael regarding these obligations.

The agreement also obligated Michael to maintain health, accident, hospitalization, dental, and optometric insurance for the children and to pay one-half of any amounts not reimbursed by insurance. In her application for modification, Judy also asked the court to order Michael to pay his portion of some unreimbursed medical expenses incurred for the care of Brandon. In the alternative, Judy asked the court to modify the divorce decree by transferring the tax exemption allocation regarding Brandon from Michael to her.

Michael filed an answer asking the court to dismiss the application on the grounds that he had not been sufficiently informed of any of these expenses and that Brandon had already reached the age of majority, resulting in absolute termination of Michael's legal responsibility to pay one-half of Brandon's medical or educational expenses.

After a bench trial, the district court entered an order finding that the post high school education obligations ran past the children's age of majority. The court also found the agreement to be ambiguous in three areas. It construed Judy's obligations vis-à-vis the college expenses as being identical to Michael's, although the agreement was silent on this point. This construction is consistent with Judy's understanding of her obligations. The court also construed the room and board to include only the on-campus rent and food expenses. It further construed the obligation to include only 4 years of education after high school. The court found all the tuition, book, and on-campus room and board expenses already accrued by Brandon and Tiffany to be reasonable. Michael was ordered to pay his obligations within 60 days to the educational institutions attended by his children.

The court found that the children were third-party beneficiaries to the settlement agreement. Lastly, the court found that it did not have the authority to allocate a tax exemption of an adult child to his parent and dismissed the portion of Judy's

application requesting such relief. The court overruled a motion for new trial filed by Michael. A timely appeal was filed by Michael, and Judy cross-appeals.

## ASSIGNMENTS OF ERROR

Michael assigns, restated, that the district court erred by (1) finding that Michael was obligated by the settlement agreement to pay educational expenses after the child reaches the age of majority, (2) finding that the children are third-party beneficiaries, (3) overcalculating the amounts owed by Michael, (4) ordering Michael to pay this amount within 60 days, and (5) ordering Michael to pay his obligations directly to the educational institutions.

Judy cross-appeals, assigning, restated, that the district court erred by (1) finding the settlement agreement to be ambiguous, (2) finding the educational obligations to be limited to 4 years, and (3) finding it had no authority to reallocate the tax exemption for their college-bound adult child.

## STANDARD OF REVIEW

■ Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Gruber v. Gruber*, 261 Neb. 914, 626 N.W.2d 582 (2001).

■ The meaning of a contract and whether a contract is ambiguous are questions of law. *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 655 N.W.2d 390 (2003).

■ On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *K N Energy v. Village of Ansley*, ante p. 164, 663 N.W.2d 119 (2003).

## ANALYSIS

### PAST AGE OF MAJORITY

Michael's first assignment of error raises two issues: (1) whether a district court has the authority to enforce the terms of an approved settlement which includes an agreement to support an adult child and (2) whether the settlement agreement or decree does in fact obligate Michael to support an adult child.

■ Michael cites *Meyers v. Meyers*, 222 Neb. 370, 383 N.W.2d 784 (1986), for the proposition that a court cannot order continuing support for an adult child as part of the divorce decree. Indeed, the law does not force a parent to support his adult child. In *Zetterman v. Zetterman*, 245 Neb. 255, 512 N.W.2d 622 (1994), however, we held that although Neb. Rev. Stat. § 42-364 (Reissue 1988) does not permit a district court in a dissolution action to order child support beyond the age of majority, the district court has the authority to enforce the terms of an approved settlement which may include an agreement to support a child beyond the age of majority. See, *Foster v. Foster, ante* p. 32, 662 N.W.2d 191 (2003); *Groseth v. Groseth*, 257 Neb. 525, 600 N.W.2d 159 (1999). This is precisely what the district court did—enforce an existing agreement in context of a dissolution action. Therefore, to the extent that the settlement agreement obligates Michael to legal responsibility for his adult children, the district court has the authority to order Michael to comply with those provisions, even after the children reach the age of majority.

■ Whether this settlement agreement does in fact require Michael to contribute to his children's education after they reach the age of majority is the question we now address. The district court interpreted paragraph B4 of the agreement to include such an obligation. It appears that the court did not find this aspect of the agreement to be ambiguous, but, rather, read the contract language to plainly include postminority schooling. We review this determination independently as a matter of law. See *Spanish Oaks, supra*. A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Guerrier v. Mid-Century Ins. Co., ante* p. 150, 663 N.W.2d 131 (2003). In our independent review, we ask whether paragraph B4 of the agreement is susceptible of a reasonable interpretation that the obligation to cover expenses of each child's "education after high school, including college or vocational training," ends at the child's 19th birthday. We conclude that this phrase is not susceptible of such an interpretation. When a contract is unambiguous, the intentions of the parties must be determined from the contract itself. *Spanish Oaks, supra*. The plain and ordinary meaning of the terms as an ordinary or reasonable person would

understand them contemplates a college education, which in virtually all cases runs past the student's age of majority. This assignment of error is without merit.

### THIRD-PARTY BENEFICIARIES

The issue of the children's third-party beneficiary status is not properly before this court. None of the children are seeking to exercise their status as third-party beneficiaries. Until such time as they do, the issue is not ripe for judicial determination. While the district court, in dicta, opined that the children are third-party beneficiaries to the settlement agreement, that finding was not required for the court to determine the case before it. A court decides real controversies and determines rights actually controverted, and does not address or dispose of abstract questions or issues that might arise in a hypothetical or fictitious situation or setting. *In re Estate of Reading*, 261 Neb. 897, 626 N.W.2d 595 (2001). Thus, a court should avoid declaratory judgments unless the pleadings present a justiciable controversy which is ripe for judicial determination. *US Ecology v. State*, 258 Neb. 10, 601 N.W.2d 775 (1999). We decline to address this aspect of the district court order.

### OVERCALCULATION OF MICHAEL'S OBLIGATION

Michael alleges that he was not properly credited for money he has given to Brandon for his educational expenses. Michael's brief specifically mentions two categories. The record shows that Michael wired Brandon a total of $475 in four installments between November 6 and December 17, 2001. Michael testified that he sent this money after Brandon complained of difficulty paying his off-campus rent while at college. The record also shows that Michael paid $102.07 toward a Stafford loan for Brandon's education. Michael asserts that the trial court erred in withholding from him credit for these expenditures.

The portion of this assignment of error which pertains to the loan payment has merit. The court did not credit Michael for this amount. The court ordered Michael to pay $7,842.30 for Brandon's educational expenses over his first four semesters at the college. This is one-half of the exact sum of tuition plus on-campus room and board for the years 2000 to 2002, as recorded in exhibit 1. Therefore, Michael was not given credit for his

payment into Brandon's loan account. Since neither the agreement nor the divorce decree specified the method Michael was required to pay his one-half of Brandon's educational expenses, this loan payment is properly considered as partial fulfillment of his obligations. It was an abuse of discretion for the district court not to credit Michael for this payment.

However, the portion of this assignment of error which concerns the money transfers into Brandon's checking account is without merit. The court found that Michael was not liable for Brandon's off-campus rent. The court found that the "room and board" language was ambiguous and limited it to on-campus expenses. Neither party has complained about the court's construction of these terms, "room and board," and we find sufficient evidence to support the court's construction. Brandon was living off campus during the two semesters of the 2001-2002 school year, the time Michael supplied Brandon with the $475 for off-campus rent. Since Michael was not obligated by the court order to pay one-half of this amount, any money he supplied to Brandon was voluntary and was not compelled by the settlement agreement or the divorce decree. The Nebraska Court of Appeals recently determined in *Palagi v. Palagi*, 10 Neb. App. 231, 627 N.W.2d 765 (2001), that a father's voluntary payments of his child's college-related expenses did not offset accrued child support payments. Similarly, Michael's voluntary donation of money to Brandon for off-campus rent does not offset Michael's obligations to pay any sums compelled by the settlement agreement or the divorce decree. This portion of Michael's assignment of error is without merit.

## 60 Days to Pay

Michael also alleges it to be inequitable for the court to order full payment of his obligations, a total of $10,124.61, within 60 days when the identical obligation of Judy is being paid over a longer term. The record indicates that at the time of trial, Judy had paid only about $500 cash for Brandon's college expenses. However, as Michael's brief stresses, Judy is taking full advantage of the federal loan programs, and she is assuming the obligations of these loans. Michael is not precluded from also acquiring a loan for his obligations. The order to pay the required amount

within 60 days is not unreasonable and not an abuse of discretion. See, *Waldbaum v. Waldbaum*, 171 Neb. 625, 107 N.W.2d 407 (1961) (requiring that husband in dissolution proceeding pay $10,000 within 30 days of mandate issuance); *Spencer v. Spencer*, 158 Neb. 629, 64 N.W.2d 348 (1954) (ordering alimony payment of $15,000 within 60 days of mandate issuance). This assignment of error is without merit.

## PAYMENT TO EDUCATIONAL INSTITUTIONS

■ The court ordered that Michael pay his one-half of Brandon's and Tiffany's accrued college tuition expenses directly to the institutions attended. Michael alleges that such an arrangement turns the institutions into third-party beneficiaries. This assertion is unfounded. As Michael admits, the parties to the agreement had no intention of benefiting these educational institutions when they formed their agreement. This precludes any third-party beneficiary status. See *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436 (1996).

We also determine that the district court did not abuse its discretion in ordering Michael to pay accrued college tuition expenses directly to the institutions. The court did not explain why it required Michael to pay the educational institutions directly, and the record is unclear regarding the actual amounts presently owed to the institutions, but it is not uncommon for divorce decrees to order one party to pay certain debts directly to the creditor and not through the court or through the other party. See, e.g., *Dennis v. Dennis*, 6 Neb. App. 461, 574 N.W.2d 189 (1998); *Else v. Else*, 5 Neb. App. 319, 558 N.W.2d 594 (1997). Neither Michael nor Judy is deprived of a substantial right by the court's ordering Michael to pay the educational institutions directly. This assignment of error is without merit.

## 4-YEAR LIMITATION

Judy asserts in her cross-appeal that the settlement agreement was not ambiguous and that the proper interpretation of the agreement precludes the court from reading a 4-year post high school education limitation into it.

In order to assess this assignment of error, we must first address the finding of the district court that paragraph B4 of the

agreement was ambiguous. This paragraph (and its identical language in the dissolution decree) reads: "In the event, any of said children shall elect to pursue further education after graduation from high school, including college or vocational training, the husband agrees to be responsible for one-half of such expenses for each child, including tuition, books, and room and board."

A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Guerrier v. Mid-Century Ins. Co., ante* p. 150, 663 N.W.2d 131 (2003). Whether a contract is ambiguous and therefore in need of construction is a question of law. *Tighe v. Combined Ins. Co. of America*, 261 Neb. 993, 628 N.W.2d 670 (2001). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *K N Energy v. Village of Ansley, ante* p. 164, 663 N.W.2d 119 (2003). When the terms of a contract are clear, a court may not resort to rules of construction, and terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the contract. *Reichert v. Rubloff Hammond, L.L.C.*, 264 Neb. 16, 645 N.W.2d 519 (2002).

The language of the agreement does not set out any explicit duration limitation for the educational expenses assistance. However, we must determine whether this paragraph is susceptible of incompatible but reasonable interpretations regarding the presence or absence of durational limits. We find that the phrase "further education after graduation from high school, including college or vocational training," unambiguously means education up to the attainment of a 4-year bachelor's degree. Other jurisdictions that have considered the scope of the term "college" similarly have concluded that it unambiguously means an " 'undergraduate' school . . . having a course of study commonly requiring four years for completion and leading to a bachelor's degree." *Matter of Kelly*, 285 N.Y. 139, 142, 33 N.E.2d 62, 63 (1941). See, also, e.g., *Barnard v. Barnard*, 214 Conn. 99, 570 A.2d 690 (1990); *In re Marriage of Holderrieth*, 181 Ill. App. 3d 199, 203-04, 536 N.E.2d 946,

949-50, 129 Ill. Dec. 896, 899-900 (1989) (stating that "the term 'college or professional' . . . is sufficiently unambiguous . . . [and that] college refers to undergraduate study in the liberal arts or sciences leading, usually after four years, to a bachelor's degree").

In a case cited frequently for its holding that "college," commonly understood, refers to undergraduate education, the court was called upon to decide whether a will which provided for contribution " 'toward the expense of a college education . . . until [the devisee] completes his college education' " included a contribution toward a postgraduate medical education. *Epstein v. Kuvin*, 25 N.J. Super. 210, 211, 95 A.2d 753 (1953). After concluding that "the meaning commonly attached to the term, 'a college education,' [is] a four-year course [which] leads to a bachelor's degree in liberal arts or science, or to an engineering degree," the court explained its holding:

> We are aware, of course, of many variations in the scheme and in the use of the word "college." Yet we believe that the great majority of people, when they say that this member of the family or that acquaintance had a college education or has a college degree, mean that he has taken a regular course of study on the undergraduate level that is open to students coming directly from high school; and that he has been awarded the bachelor's degree to which the course leads, and so completed his college education.

*Id.* at 213-14, 95 A.2d at 754.

■ We adopt the same commonsense, plain meaning approach that several other courts have employed. The term "college," as used in this context, can only mean an undergraduate institution having a course of study commonly requiring 4 years for completion and leading to a bachelor's degree. Even though a growing number of young adults are extending their college "careers" to 5 years and beyond, the common and accepted course of study leading to a bachelor's degree remains at 4 years. The district court did not err as a matter of law in construing the settlement agreement to include a maximum of 4 years' post high school education.

Michael and Judy are each obligated by the plain meaning of the settlement agreement and the divorce decree to supply one-half

of the costs of tuition, books, and on-campus room and board for each of their children's post high school education in pursuit of vocational training or a 4-year bachelor's degree.

## TAX CLAIM ALLOCATION

In her application to the district court, Judy asked the court to either award her one-half the unreimbursed medical expenses she paid for Brandon's medical care or, in the alternative, to be given the right, now allotted to Michael, to claim Brandon as her dependent on her tax form. This would preclude Michael (and Brandon) from claiming Brandon on any other tax return. At trial, Judy's counsel clarified that Judy understands these medical expenses occurred after Brandon turned 19, and therefore, Michael is not legally obligated to pay for any portion of them. However, Judy still asks the court that if she is going to incur these costs on behalf of Brandon, she should be able to claim him on her tax return, in contradistinction to the agreement and the release she signed.

The district court found that it did not have the authority to award a tax exemption for an adult child. It found that it could not preclude Brandon from claiming himself. Furthermore, the tax exemption allotment was part of the dissolution decree and, therefore, can be modified only upon a material and substantial change in circumstances. See, *Bowers v. Scherbring*, 259 Neb. 595, 611 N.W.2d 592 (2000); Neb. Rev. Stat. § 42-365 (Reissue 1998). The district court did not abuse its discretion in finding that no such material change had occurred. This assignment of error is without merit.

## CONCLUSION

In conclusion, we affirm, as modified, the judgment of the district court. We affirm the court's finding that Michael and Judy are both obligated to pay one-half the tuition, books, and on-campus room and board for each of their children's pursuit of a 4-year bachelor's degree or of vocational training, including those expenses incurred after the recipient child attains the age of majority. However, we modify the judgment so as to give Michael credit for his $102.07 payment into Brandon's Stafford loan account. Paragraph 3 of the judgment is modified to reflect

that Michael is ordered to pay the University of Montana the total sum of $7,740.23, representing the remaining one-half of Brandon's tuition and room and board for the first and second semesters of the 2000-2001 school year, and one-half of tuition only for the first and second semesters of the 2001-2002 school year. In all other respects, the judgment is affirmed.

AFFIRMED AS MODIFIED.