General Drivers & Helpers Union, Local No. 554,
appellant, v. County of Douglas, Nebraska,
and Tom Doyle, Douglas County
Engineer, appellees.

___ N.W.2d ___

Filed June 19, 2015.    No. S-14-531.

1. **Contracts.** The meaning of a contract and whether a contract is ambiguous are questions of law.
2. **Judgments: Appeal and Error.** On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.
3. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
4. ____: ____. An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
5. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.
6. **Contracts.** A contract must be construed as a whole, and its terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.

Appeal from the District Court for Douglas County: W. Russell Bowie III, Judge. Affirmed.

M.H. Weinberg, of Weinberg & Weinberg, P.C., for appellant.

Donald W. Kleine, Douglas County Attorney, Timothy K. Dolan, and Meghan M. Bothe for appellees.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

McCormack, J.

## NATURE OF CASE

This case involves a dispute between Douglas County, Nebraska (the County), and General Drivers & Helpers Union, Local No. 554 (the Union), regarding the construction of its collective bargaining agreement (the CBA). The issue to be determined is whether the word "start" in the CBA means the starting wage for all employees in a certain classification or whether only the "start" of the pay scale from which employees may be hired at different wages. The Union appeals the declaratory judgment that "start" is unambiguous and is the minimum wage or "start" of a pay scale.

## BACKGROUND

The Union, the Douglas County engineer, and the County are parties to a CBA effective from January 1, 2010, through December 31, 2013. The CBA controls the terms and conditions of employment for mechanics employed by the County. Article 1, section 1, of the CBA states that the County "recognizes the Union as the sole and exclusive collective bargaining representative for the purposes of establishing wages, hours and other conditions of employment for all regular full time and regular part time employees."

A management rights clause states:

> Except where limited by express provisions of [the CBA], nothing herein shall be construed or interpreted to restrict, limit or impair the rights, powers and authority of the [County] heretofore possessed and hereafter granted by virtue of law, regulations or resolution. These rights, powers and authority include, but are not limited to, the right to manage and supervise all of its operations

and establish work rules, regulations and other terms and conditions of employment not inconsistent with the specific terms of [the CBA].

Article 7 of the CBA discusses the seniority system. Article 7, section 6, states: "New employees shall be added to the seniority list as of the date of their employment, following satisfactory completion of their probationary period." Under the CBA, article 6, "newly hired employees shall serve a probationary period of ninety (90) days. . . . Employees shall not be eligible for promotion during the probationary period provided in this Article."

Article 9, section 1, states:

"[P]romotion" shall be defined as the advancement of an employee from one position classification to another in a higher salary grade within their department. A promoted employee will move to the step in the higher classification that is above his current rate and will progress on annual steps thereafter to the maximum.

Article 31 is entitled, "Teamsters Bargaining Unit Pay Rates - Effective January 1, 2013." For all positions there exists a chart, at the top of which are columns entitled "Start," "Step 2," "Step 3," et cetera, through "Step 8." Under each column is an hourly pay rate that increases with each step. For the "Equipment Mechanic II" position, the "start" pay is $19.44 per hour and increases until the pay scale ends at $23.98 per hour at "Step 8."

### Hiring of Randy Nickell

In late October 2013, the County announced a vacancy for an equipment mechanic II. The County posted a vacancy notice that described the position as "Equipment Mechanic II," with a salary range of $19.44 to $22.05 hourly.

On December 3, 2013, the County hired Randy Nickell to fill the equipment mechanic II vacancy. The County hired Nickell at the wage of $22.05 per hour, corresponding to step 5 of the 2013 pay scale provided in the CBA.

GRIEVANCE

The Union steward filed a grievance, arguing that the CBA prevented the County from hiring a new employee at a wage above the "start," or the first step, of the pay scale.

The parties filed a joint stipulation of facts and cross-motions for summary judgment. Based on the parties differing interpretations of the word "start" in the CBA, the parties filed for summary judgment on the meaning of "start" in the CBA pay rates scale. The parties reserved any breach of contract claim for after the resolution of this motion.

TRIAL COURT OPINION

The trial court granted summary judgment in favor of the County. The trial court stated that "the CBA, taken as a whole, is not ambiguous . . . and as drafted does not prohibit [the] County from hiring an employee at a wage above the starting step of the pay scale." In coming to this decision, the trial court looked at the CBA's "Management Rights" clause. The court noted that the clause reserved to the County the right to establish "'other terms and conditions of employment.'" The court reasoned that a starting wage is a condition of employment. Thus, the court found that the County had the right to select a new hire's starting pay, at least within the range set forth for that position in article 31 of the CBA.

Further, the court found that "[t]he express provisions of the CBA do not state that the 'Start' step on the pay scale must be the uniform starting wage for all new hires" of a given position. The trial court found significant the fact that the CBA stated that a vacancy notice shall include a salary range for a posted position. The Union appeals.

ASSIGNMENTS OF ERROR

The Union asserts, restated, that the trial court erred in granting summary judgment (1) by concluding that there was no starting or initial salary specified in the CBA, (2) by finding that the word "start" in the CBA was not ambiguous, and

(3) in relying on the management rights clause to give the County the right to set initial wages without negotiation with the Union.

## STANDARD OF REVIEW

[1,2] The meaning of a contract and whether a contract is ambiguous are questions of law.[1] On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[2]

[3,4] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[3] We will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[4]

## ANALYSIS

In the trial court, the Union argued that the meaning of "start" pay under the CBA pay scale chart for "Equipment Mechanic II" unambiguously referred to the mandatory starting wage for all new employees filling that position. Under that interpretation, no new "Equipment Mechanic II" could begin employment with the County at a step 2 or above wage.

---

[1] *Gary's Implement v. Bridgeport Tractor Parts*, 270 Neb. 286, 702 N.W.2d 355 (2005). See, also, *Big River Constr. Co. v. L & H Properties*, 268 Neb. 207, 681 N.W.2d 751 (2004); *Wood v. Wood*, 266 Neb. 580, 667 N.W.2d 235 (2003).

[2] *Id.*

[3] *C.E. v. Prairie Fields Family Medicine*, 287 Neb. 667, 844 N.W.2d 56 (2014).

[4] *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 825 N.W.2d 204 (2013).

On appeal, the Union argues that "start" is ambiguous—that reasonable minds could adopt either the trial court's reading or the Union's. The County argues that the ambiguity of the CBA has been waived by the Union and cannot be raised for the first time on appeal. We disagree. The meaning of the CBA is a question of law and must be determined in order to address the Union's assignment of error that the trial court should have found the County in breach of the CBA. Whether the CBA is ambiguous is a necessary analysis in determining the meaning of the CBA.

The question in this appeal is whether, as the trial court found, the CBA pay scale established a wage range within which the County, under the management rights clause, could exercise discretion to set the level of a newly hired employee, or whether, instead, "start" is the mandatory starting wage for all beginning employees. We conclude that the meaning of "start" in this context is unambiguous and denotes the start of a pay scale in which the employer has discretion to set the step on the pay scale of each new hire.

[5] Whether a contract is ambiguous is a question of law.[5] A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.[6]

Webster's dictionary defines "start" as both "to begin an activity or undertaking" or "to begin work."[7] If we apply the first meaning of "start," then it lends itself to the Union's alleged meaning—when an employee begins to do his or her job, he begins at the "start" pay. However, if we apply the second definition supplied, the County's proffered meaning

---

[5] *Davenport Ltd. Partnership v. 75th & Dodge I, L.P.*, 279 Neb. 615, 780 N.W.2d 416 (2010).

[6] *Beveridge v. Savage*, 285 Neb. 991, 830 N.W.2d 482 (2013); *Davenport Ltd. Partnership v. 75th & Dodge I, L.P., supra* note 5.

[7] Webster's Third New International Dictionary of the English Language, Unabridged 2227 (1993).

seems to apply; "to begin work" would mean that "start" is causing the *pay scale* to begin at a minimum starting wage of $19.44 per hour and ending at step 8, which is $23.98 per hour.

[6] However, a contract must be construed as a whole,[8] and its terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.[9] In light of the reasonable interpretation of the remaining provisions of the CBA, the meaning of the term "start" becomes clear.

The CBA includes a management rights provision in article 3 which allows the County to "manage and supervise all of its operations and establish work rules, regulations and other terms and conditions of employment," except where the terms are otherwise limited by the CBA. Here, the terms of the CBA limit the pay of an equipment mechanic II. But they do so by setting forth a pay range to anywhere from the "start" pay at $19.44 hourly up to the step 8 pay at $23.98 hourly. There is no express provision stating that new employees must begin at "start," or $19.44 per hour. Therefore, the County complied with this limitation on the pay for Nickell.

The management rights clause gave the County the flexibility to determine where Nickell's pay fell on the bargained-for pay scale. Further, common sense suggests that the County must be free to offer different wages to new employees according to their experience and expertise. If the County needed a highly experienced equipment mechanic, the County could not expect to pay that mechanic the starting wage that it would give to an applicant with very little experience.

---

[8] *Hearst-Argyle Prop. v. Entrex Comm. Servs.*, 279 Neb. 468, 778 N.W.2d 465 (2010); *Lexington Ins. Co. v. Entrex Comm. Servs.*, 275 Neb. 702, 749 N.W.2d 124 (2008).

[9] See, *Kercher v. Board of Regents*, 290 Neb. 428, 860 N.W.2d 398 (2015); *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015).

Other provisions of the CBA also support the reading that "start" is merely the beginning of a pay range by which equipment mechanics may be assigned a wage. For example, the CBA expressly states that any vacancy notices posted by the County should include a salary range for the posted position. If the CBA meant to have each new hire begin work at the "start" wage, then the vacancy notice could post only the starting wage.

## CONCLUSION

Reading the CBA as a whole, we find that the meaning of "start" in article 31 of the CBA is unambiguous and that summary judgment was proper.

AFFIRMED.

WRIGHT, J., participating on briefs.