Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/21/2025 09:10 AM CDT

Clint Seemann, appellee, v. Lisa Seemann,
now known as Lisa Newell, appellant.

___ N.W.3d ___

Filed March 21, 2025.    No. S-24-583.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4. **Antenuptial Agreements.** As a contract, a premarital agreement is governed by the same principles that are applicable to other contracts but is subject to the particular statutory requirement that a premarital agreement must be based on fair disclosure.

5. **Contracts.** The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review.

6. **Divorce: Property Division.** Under Nebraska common law, as a general rule, property accumulated and acquired by either spouse during the marriage is part of the marital estate, whereas property a party brings into the marriage is excluded from the marital estate.

7. **Divorce: Property Division: Words and Phrases.** The "active appreciation rule" holds that the appreciation or income of a nonmarital asset during the marriage is marital insofar as it was caused by the efforts of either spouse or both spouses.

8. **Antenuptial Agreements: Property Division.** Pursuant to the Uniform Premarital Agreement Act, spouses are able to contract around the general rules of equitable division by using a premarital agreement.

9. **Contracts.** In interpreting contracts, the court as a matter of law must first determine whether the contract is ambiguous.

10. \_\_\_\_. A determination as to whether an ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties.

11. \_\_\_\_. The fact that the parties have suggested opposite meanings of a disputed contract does not necessarily compel the conclusion that the contract is ambiguous.

12. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.

13. **Contracts: Intent.** When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.

14. \_\_\_\_: \_\_\_\_. A court shall seek to ascertain the intention of the parties from the plain language of the contract.

15. **Contracts.** If it can be avoided, no word, clause, or sentence of a contract will be rejected as superfluous or meaningless.

16. **Contracts: Intent.** A court will give due force to the grammatical arrangement of the clauses of a contract, unless by so doing it appears to be at variance with the intent of the parties as indicated by the contract as a whole.

Appeal from the District Court for Douglas County, Tressa M. Alioth, Judge. Reversed and remanded with directions.

John Andrew McWilliams, Frederick D. Stehlik, and Alexandria M. Bartels, of Gross Welch Marks Clare, P.C., L.L.O., for appellant.

William L. Finocchiaro and Christopher A. Vacanti, of Vacanti Shattuck Finocchiaro, for appellee.

Funke, C.J., Miller-Lerman, Cassel, Papik, and Freudenberg, JJ.

Freudenberg, J.

## INTRODUCTION

The wife appeals from an amended decree of dissolution entered by the district court following our opinion and mandate in *Seemann v. Seemann* (*Seemann I*).[1] In that prior appeal, we concluded that the district court erred by omitting assets from the marital estate and overvaluing a marital asset. Accordingly, we remanded the matter with directions to redivide the marital estate. On the instant appeal, the parties dispute whether the parties' premarital agreement required an equal division of the marital estate. We hold that it does. We reverse, and remand to the district court with directions consistent with this opinion.

## BACKGROUND

### Background and Procedural History

Clint Seemann and Lisa Seemann married in 2005. Before their marriage, Clint and Lisa executed a premarital agreement (Agreement). As relevant to the instant appeal, the Agreement listed Clint's and Lisa's premarital assets, which included land and shares of stock, that were to be considered marital property. Paragraph 8 of the Agreement (paragraph 8) further provided:

> The assets of both parties listed in this agreement shall be considered as part of the marital property which shall be divided equally in the event of death or divorce. Marital property shall also include property that results from the efforts of **CLINT** and **LISA** during the marriage.

In 2021, Clint filed a complaint for the dissolution of his marriage to Lisa.

### Original Decree

Following a trial, the district court entered a "Decree of Dissolution of Marriage" (original decree). Relevant from *Seemann I*, the court valued Lisa's retirement accounts at

---

[1] *Seemann v. Seemann*, 316 Neb. 671, 6 N.W.3d 502 (2024).

$1,480,720 and included them in the marital estate. The court determined that Clint's membership interest in 75th and L Street, LLC, and its subsequent appreciation in value were Clint's nonmarital property. The court did not address in its decree the value of Clint D. Seemann, P.C., or the value of the carpet and tile that Clint retained, which were purchased for renovations to the marital residence.

The court found the Agreement to be enforceable and quoted the first sentence of paragraph 8: "'[T]he assets of both parties listed in this Agreement shall be considered part of the marital property which shall be divided equally in the event of death or divorce.'" The court found that the assets listed in the Agreement, which included shares of Berkshire Hathaway Class A stock, "should be divided equally as required by [the Agreement]." The court did not address whether paragraph 8 applied to the entire marital estate. However, the court divided the total marital estate equally between the parties and ordered Lisa to make an equalization payment of $22,021 to Clint.

### Appeal of Original Decree

Lisa appealed the original decree, arguing the district court erred in, among other things, (1) dividing the Berkshire Hathaway Class A stock, (2) overvaluing her retirement accounts, (3) requiring her to make an equalization payment to Clint, and (4) failing to include in the marital estate the appreciation in value of Clint's membership interest in 75th and L Street, LLC; the value of the carpet and tile that Clint retained; and the value of Clint D. Seemann, P.C. Clint did not cross-appeal.

In *Seemann I*,[2] we reversed, and remanded with directions. We concluded that the district court abused its discretion by failing to include in the marital estate (1) the $1,347,666 appreciation of Clint's interest in 75th and L Street, LLC; (2) the $80,000 value of the carpet and tile that Clint retained;

---

[2] *Seemann I, supra* note 1.

and (3) the $27,768 value of Clint D. Seemann, P.C. We further concluded that the court erred by overvaluing Lisa's retirement accounts at $1,480,720 instead of at $1,430,720. In total, we found the value of the marital estate was $1,405,434 greater, which we determined had a "not insignificant impact" on the size of the marital estate, the division of property awarded to each party, and any equalization payment.[3] We also reversed the portion of the original decree ordering Lisa to make an equalization payment.

We did not address whether paragraph 8 required the court to equally divide all marital property. In summarizing our changes to the marital estate, we noted that when the district court ordered Lisa to make an equalization payment, it effectively determined that the marital estate, as provided in the original decree, should be divided equally. Acknowledging that our opinion changed the marital estate's "composition and value,"[4] we remanded the matter for "an equitable division of the marital estate as it is constituted after [our] corrections"[5] and stated that "such division may require a different equalization payment, if any, by one party or the other."[6] We advised the court to "bear in mind both the proposition that as a general rule, a spouse should be awarded one-third to one-half of the marital estate . . . and any provisions of the parties' premarital agreement regarding division of the marital property in the event of divorce."[7]

## Remand and Amended Decree

On remand, the district court entered an "Amendment to Decree of Dissolution of Marriage" that implemented our additions and other changes to the marital estate. In so doing,

---

[3] *Id*. at 696, 6 N.W.3d at 523.

[4] *Id*. at 697, 6 N.W.3d at 523.

[5] *Id*.

[6] *Id*. at 696, 6 N.W.3d at 523.

[7] *Id*. at 697, 6 N.W.3d at 523.

the court divided the marital property into two groups: (1) the assets listed in the Agreement and (2) the remainder of the marital estate.

In quoting the first sentence of paragraph 8, the court equally divided the parties' assets listed in the Agreement, as it had in the original decree. As a result, the court ordered Clint to make an equalization payment of $229,464.

In dividing the remainder of the marital estate, the court made no changes to its initial division, other than implementing the changed value of Lisa's retirement accounts. It awarded Clint all the assets added to the marital estate on remand and did not order Clint to make an equalization payment for the remainder of the marital estate. As a result, Lisa received 37.43 percent of the remainder of the marital estate, or $1,493,220, and Clint received 62.57 percent of the remainder, or $2,495,684.

This resulted in Lisa's receiving 45.25 percent of the total marital estate, or $4,775,684, and Clint's receiving 54.75 percent of the total marital estate, or $5,778,148. The court ordered Clint to reimburse the $22,021 equalization payment that Lisa made in compliance with the original decree.

The district court did not provide its reasons for not dividing the total marital estate equally on remand. However, in dividing the remainder of the marital estate unequally, the court noted our comments in *Seemann I* and stated:

> As reminded on multiple occasions within the Nebraska Supreme Court Opinion, *the district court should bear in mind the proposition that as a general rule, a spouse should be awarded one-third to one-half of the marital estate, Parde v. Parde, 313 Neb. 779, 986 N.W.2d 504 (2023).*

(Emphasis in original.) Lisa filed a timely appeal.

## ASSIGNMENT OF ERROR

Lisa assigns that the district court erred in failing to equally divide the parties' entire marital estate on remand.

## STANDARD OF REVIEW

[1-3] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.[8] This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.[9] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[10] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[11]

[4,5] As a contract, a premarital agreement is governed by the same principles that are applicable to other contracts but is subject to the particular statutory requirement that a premarital agreement must be based on fair disclosure.[12] The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review.[13]

## ANALYSIS

At issue in the instant appeal are Clint's and Lisa's differing understandings of paragraph 8. Clint and Lisa agree that pursuant to paragraph 8, the property listed in the Agreement is part of the marital estate. However, Lisa argues that paragraph 8 requires an equal division of the entire marital estate, while Clint argues that it requires an equal division of only

---

[8] *Tierney v. Tierney*, 309 Neb. 310, 959 N.W.2d 556 (2021).

[9] *Id.*

[10] *Id*.

[11] *Id.*

[12] See *Seemann I, supra* note 1.

[13] *Brush & Co. v. W. O. Zangger & Son*, 314 Neb. 509, 991 N.W.2d 294 (2023).

the assets listed in the Agreement. We hold that the Agreement requires the equal division of the entire marital estate.

[6,7] Under Nebraska common law, as a general rule, property accumulated and acquired by either spouse during the marriage is part of the marital estate, whereas property a party brings into the marriage is excluded from the marital estate.[14] The "active appreciation rule" holds that the appreciation or income of a nonmarital asset during the marriage is marital insofar as it was caused by the efforts of either spouse or both spouses.[15] Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the marital estate is subject to equitable division, whereby a spouse should generally be awarded one-third to one-half of the marital estate.[16]

[8] Pursuant to the Uniform Premarital Agreement Act,[17] spouses are able to contract around the general rules of equitable division by using a premarital agreement.[18] Section 42-1004 permits parties to a premarital agreement to contract with respect to, among other things, "[t]he rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located" and "[t]he disposition of property upon separation, marital dissolution, death, or the occurrence or nonoccurrence of any other event."[19] A premarital agreement is governed by the same principles that are applicable to other contracts but is subject to the particular statutory requirement that a premarital agreement must be based on fair disclosure.[20]

---

[14] See *Stava v. Stava, ante* p. 32, 13 N.W.3d 184 (2024).

[15] See *Stephens v. Stephens*, 297 Neb. 188, 205, 899 N.W.2d 582, 595 (2017).

[16] See *Stava, supra* note 14.

[17] Neb. Rev. Stat. §§ 42-1001 to 42-1011 (Reissue 2016).

[18] *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022); *Seemann I, supra* note 1.

[19] Accord *Seemann I, supra* note 1.

[20] See *id*. See, also, *Simons, supra* note 18.

[9-11] In interpreting contracts, the court as a matter of law must first determine whether the contract is ambiguous.[21] A determination as to whether an ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties.[22] The fact that the parties have suggested opposite meanings of a disputed contract does not necessarily compel the conclusion that the contract is ambiguous.[23] The meaning of a contract and whether a contract is ambiguous are questions of law.[24]

[12-15] A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.[25] When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.[26] A court shall seek to ascertain the intention of the parties from the plain language of the contract.[27] If it can be avoided, no word, clause, or sentence of a contract will be rejected as superfluous or meaningless.[28]

[16] In determining whether certain provisions of a contract are ambiguous, we focus on the words employed and construe any undefined words in harmony with their plain and generally accepted meaning and by reference to all the parts and

---

[21] *Wintroub v. Nationstar Mortgage*, 303 Neb. 15, 927 N.W.2d 19 (2019).

[22] *DH-1, LLC v. City of Falls City*, 305 Neb. 23, 938 N.W.2d 319 (2020).

[23] See *id.*

[24] *General Drivers & Helpers Union v. County of Douglas*, 291 Neb. 173, 864 N.W.2d 661 (2015).

[25] *Id.*

[26] *Wood v. Wood*, 266 Neb. 580, 667 N.W.2d 235 (2003).

[27] *Id.*

[28] See *Parent v. City of Bellevue Civil Serv. Comm.*, 17 Neb. App. 458, 763 N.W.2d 739 (2009). See, also, *City of Sidney v. Municipal Energy Agency of Neb.*, 301 Neb. 147, 917 N.W.2d 826 (2018); *Nygren v. Nygren*, 14 Neb. App. 1, 704 N.W.2d 257 (2005); Restatement (Second) of Contracts § 203 (1981).

provisions of the agreement and the nature of the transaction that forms its subject matter.[29] In addition to dictionary definitions, a plain meaning analysis must include reading words and phrases in context and construing them in accordance with the rules of grammar and common usage.[30] A court will give due force to the grammatical arrangement of the clauses of a contract, unless by so doing it appears to be at variance with the intent of the parties as indicated by the contract as a whole.[31]

Paragraph 8 provides in its entirety:

> 8. The assets of both parties listed in this agreement shall be considered as part of the marital property which shall be divided equally in the event of death or divorce. Marital property shall also include property that results from the efforts of **CLINT** and **LISA** during the marriage.

Clint and Lisa disagree whether the clause in the first sentence, "which shall be divided equally in the event of death or divorce," defines a limited subcategory of marital property that shall be divided equally or, instead, gives the additional information that all the marital property shall be divided equally.

Clint believes that the clause defines a subcategory composed solely of the assets listed in the Agreement and that any other property considered under Nebraska law to be "marital property" is subject to equitable division, which need not necessarily be equal. In contrast, Lisa believes the clause provides that all marital property shall be divided equally

---

[29] See *School Dist. No. 1 v. Denver Classroom*, 433 P.3d 38 (Colo. 2019). See, also, e.g., *Brush & Co., supra* note 13.

[30] Jeffrey W. Stempel, *What Is the Meaning of "Plain Meaning"?*, 56 Tort Trial & Ins. Prac. L.J. 551 (2021). See, also, *Saint James Apt. Partners v. Universal Surety Co.*, 316 Neb. 419, 5 N.W.3d 179 (2024); *In re Estate of Brinkman*, 308 Neb. 117, 953 N.W.2d 1 (2021); *Katskee v. Blue Cross/Blue Shield*, 245 Neb. 808, 515 N.W.2d 645 (1994).

[31] See *U. P. Terminal F. C. U. v. Employers M. L. Ins. Co.*, 172 Neb. 190, 109 N.W.2d 115 (1961). See, also, *In re Estate of Matthews*, 13 Neb. App. 813, 702 N.W.2d 821 (2005).

and that the first part of the sentence expressly includes the listed assets as marital property. Grammatically, Clint reads the clause in question as restrictive, while Lisa reads it as nonrestrictive.

A clause is restrictive when it is "essential to the meaning of the sentence," inasmuch as it restricts the meaning of the preceding noun.[32] "A restrictive clause is one that gives us information about the preceding noun or noun phrase (called the antecedent) in order to distinguish the antecedent from other items in the same category."[33] An example of a sentence with a restrictive clause is: "The meeting that starts at 10 a.m. is about [cars]."[34] The restrictive clause, "that starts at 10 a.m.," identifies which, of all potential meetings, the sentence is about. Without the clause "that starts at 10 a.m.," the meaning of "[t]he meeting" would change; there would clearly be only one meeting. So, the clause is "essential" to the sentence.[35]

A nonrestrictive clause gives "supplemental" information and does not restrict the meaning of the preceding noun.[36] A nonrestrictive phrase or clause provides "additional description or information that is incidental to the central meaning of the sentence."[37] A clause is nonrestrictive when it could be removed from the sentence without "changing the essential

---

[32] Bryan A. Garner, The Redbook: A Manual on Legal Style § 10.20 at 188 (3d ed. 2013). See, also, Scott Moïse, *English Test for Lawyers: Fall Semester 2021*, S.C. Law. 56 (Jan. 2022); Joseph Kimble, *The Doctrine of the Last Antecedent, the Example in* Barnhart*, and Why Both Are Weak*, 99 Judicature 21 (2015).

[33] Richard C. Wydick, *True Confessions of a Diddle-Diddle Dumb-Head*, 11 Scribes J. Legal Writing 57, 60 (2007) (emphasis omitted).

[34] See Garner, *supra* note 32, § 1.6 at 6.

[35] See *id.*, § 10.20 at 188.

[36] Kenneth A. Adams, *Bamboozled by a Comma: The Second Circuit's Misdiagnosis of Ambiguity in* American International Group, Inc. v. Bank of America Corp., 16 Scribes J. Legal Writing 45, 51 (2015).

[37] See Garner, *supra* note 32, § 1.6 at 6.

meaning of the sentence."[38] An example of a nonrestrictive phrase or clause is: "The . . . meeting, which starts at 10 a.m., is about [cars]."[39] The nonrestrictive clause, "which starts at 10 a.m.," provides additional information about the meeting and is incidental to the sentence's "central meaning,"[40] to wit: the singular meeting of the day is about cars.

In American English, "which" is "reserved for introducing a nonrestrictive clause."[41] Thus, to introduce a nonrestrictive clause, one should use "which" or "who" and set off the clause with commas, dashes, or parentheses.[42] In contrast, to introduce a restrictive clause, one should use "that" or "who" and should not set off the clause with commas, dashes, or parentheses.[43] "Which" is properly used to introduce a restrictive clause only in phrases like "that which" and "in which."[44] Even so, one should use "that" instead of a "comma-less 'which'" whenever possible.[45]

"Use of commas can help distinguish between restrictive and nonrestrictive relative clauses," but "actual practice is less tidy."[46] Thus, while it may be more grammatically correct to have a preceding comma to a nonrestrictive clause, when determining whether a clause is restrictive or nonrestrictive, the words generally have greater controlling force than the punctuation.[47]

---

[38] See *id*., § 10.20 at 189.

[39] See *id*., § 1.6 at 6.

[40] See *id.*

[41] See *id*., § 10.20 at 189 (emphasis omitted).

[42] See *id*. (emphasis omitted).

[43] See *id.* at 188 (emphasis omitted).

[44] See *id*. at 189 (emphasis omitted). But see Gertrude Black, *Language for Lawyers*, Fed. Law. 39 (Aug. 2000).

[45] See Garner, *supra* note 32, § 10.20 at 189 (emphasis omitted).

[46] Adams, *supra* note 36 at 51.

[47] See 82 C.J.S. *Statutes* § 413 (2022).

Applying these principles, we agree with Lisa's reading of the first sentence of paragraph 8 as "The assets of both parties listed in this agreement shall be considered as part of the marital property[,] which shall be divided equally in the event of death or divorce." "[S]hall be divided equally" is a nonrestrictive clause that does not define a subcategory of marital property. Instead, the nonrestrictive clause gives the supplemental information that all the "marital property" shall be divided equally. The only grammatical omission was a comma.

On the other hand, Clint's suggested construction is strained and involves much more than simply replacing a "which" with a "that." If the first sentence of paragraph 8 read as "The assets of both parties listed in this agreement shall be considered as part of the marital property [that] shall be divided equally in the event of death or divorce," the sentence would indicate there is a subcategory of "marital assets" to be divided equally. While the beginning of the first sentence in paragraph 8 would obviously include the assets listed in the Agreement in that subcategory, Clint's suggested construction begs the question of what other things are included in "the marital property [that] shall be divided equally."

Yet, Clint argues the next sentence of paragraph 8, "Marital property shall also include property that results from the efforts of **CLINT** and **LISA** during the marriage," does not include such described marital property in the "the marital property [that] shall be divided equally." Instead, under Clint's reading, the second sentence of paragraph 8, half of the provision at issue, is entirely superfluous. The sentence would be merely a vague reminder of the common-law active appreciation rule that property "that results from the efforts of **CLINT** and **LISA** during the marriage" is marital property to be divided equitably pursuant to § 42-365. This reading is subject to the further anomaly that the second sentence of paragraph 8, thereby standing alone, does not actually explain if said active appreciation assets are to be divided equally under the

Agreement or equitably under § 42-365. If Clint and Lisa intended to make only the listed assets subject to equal division under the Agreement, then there was no reason to add a second sentence describing a subset of common-law principles about what is included in the marital estate for purposes of statutory equitable division.

Clint's reading renders superfluous the reference to "marital property" in the first sentence of paragraph 8. Clint interprets the first sentence to state that the assets listed in the Agreement are to be both (1) considered marital property and (2) divided equally. But, if the parties intended for the sentence to require the equal division of only the listed assets, as Clint suggests, then there would be no reason to first include those assets in the marital estate before requiring their equal division.

In conclusion, we do not find paragraph 8 susceptible of more than one reasonable meaning. Under its plain language, paragraph 8 required the district court to equally divide the entire marital estate. Therefore, we reverse the court's division of the marital estate as ordered in its amended decree and remand the cause with directions for the court to divide the marital estate equally, as required by the Agreement.

## CONCLUSION

Because the parties' premarital agreement required the district court to equally divide the entire marital estate, we reverse the division of the marital estate that was not equal and remand the cause to the district court with directions to divide the entire marital estate equally in accordance with our opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

STACY, J., participating on briefs.